# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-                                                          Cr. No. 17-1105 JCH

TYRONE CORIZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This Court held a trial in this matter on May 20-22, 2019, after which the jury returned a verdict of guilty on two counts of aggravated sexual abuse. On July 2, 2019, Defendant Tyrone Coriz filed a Motion to Dismiss, or Alternatively, to Grant a New Trial (ECF No. 162). The Government opposes the motion. Defendant requested a hearing to present argument in open court to help clarify the record, but the Court finds a hearing is not necessary, given the extensive briefing on the issues and the clear record. The Court, having considered the motion, briefs, evidence, applicable law, and otherwise being fully advised, will deny the motion.

    **I.    BACKGROUND**

On January 29, 2019, a federal grand jury returned a Superseding Indictment charging Defendant with two counts: aggravated sexual abuse of a minor in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(C), and 3559(e) (Count 1) and aggravated sexual abuse of a minor in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(D), and 3559(e) (Count 2).

Prior to trial, the Government sought admission of evidence of Defendant's sexual abuse

involving prior alleged incidents with C.T. and with other victims not alleged in the indictment, as well as additional bad acts evidence. *See* Mem. Op. and Order 2-9, ECF No 126. The Court excluded certain evidence but permitted the introduction of the following evidence of past sexual abuse under Federal Rules of Evidence 413, 414, and 404(b): Defendant's 1991 conviction for abusive sexual contact of S.S.; S.S.'s testimony that Defendant continued touching her in a sexual manner after he was released from custody; S.S.'s testimony that her mother caught him fondling her and beat him with a board in 2002; A.T.'s and S.S.'s testimony of sexual contact of S.S. and attempted sexual contact of A.T. after the movies; and M.T.'s statement that she witnessed Defendant take C.T.'s pants off while C.T. was asleep in bed. *Id.* at 3-6, 31.

The Court reserved ruling on the following testimony until a foundation could be established at trial: S.S.'s testimony that she did not discuss her sexual abuse with other family members who had been sexually abused; S.S.'s testimony that Defendant took a photograph of M.T.'s buttocks; A.T.'s testimony that Defendant touched her sexually when she was eight years old; A.T.'s testimony that Defendant laid on A.T. in a bed and digitally penetrated her; M.T. was in a separate bunk when Defendant touched S.S.; and in 2014, Defendant pushed M.T. against a wall and choked her in front of C.T. *Compare id.* at 31, *with* Gov.'s Sealed Mot. in Limine 2-4, ECF No. 95. Regarding the incidents with A.T., the Court explained that it would not admit the evidence unless there was additional testimony from A.T. that would permit it to make a credibility determination. *See id.* at 21. As for the photograph of M.T., the Court explained that the evidence could become relevant and introduced at trial if S.S. had personal knowledge that Defendant took a photograph of M.T.'s buttocks when M.T. was a minor. *See id.* at 28. Similarly, the Court stated it would not admit M.T.'s testimony about Defendant touching S.S. unless testimony established that she had personal knowledge of the incident. *See id.* at 28-29. With respect to the choking

2

incident, the Court reserved ruling until it had more context at trial. *See id.* at 29.

The Court held a three-day jury trial. The Government called S.S; two law enforcement officers, Luticia Mann and Agent James Jojola; M.T.; LeRoy Chama; C.T.; and A.T. *See* Clerk's Minutes, ECF No. 142. The defense rested without putting on any of its own witnesses. *See* Trial Tr. 464:15-23.

## II. STANDARD

Upon a defendant's motion, a court may vacate a judgment and grant a new trial in the interest of justice. Fed. R. Crim. P. 33(a). In ruling on a motion for new trial, the trial court has discretion and may weigh the evidence and assess witness credibility. *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999). A new trial, however, is viewed with disfavor and should be granted only with great caution. *Id.*

A court must determine, first, whether the prosecutor's conduct was improper, and second, whether any improper conduct requires reversal. *United States v. Apperson*, 441 F.3d 1162, 1207 (10th Cir. 2006). "When prosecutorial misconduct deprives a criminal defendant of a fair trial, the defendant's due process rights are violated, and reversal is warranted." *United States v. Gabaldon*, 91 F.3d 91, 93 (10th Cir. 1996) (internal citation omitted). To violate due process, the prosecutorial misconduct "must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Maynard*, 236 F.3d 601, 606 (10th Cir. 2000). Reversal, however, is only required when the improper conduct influenced the verdict. *Id.* The prosecutorial misconduct must have prejudiced the defendant to warrant a new trial. *See id.* Even if no individual statement is sufficiently prejudicial, a pattern of improper statements may require a new trial. *United States v. Stover*, 474 F.3d 904, 917 (6th Cir. 2007).

The court should examine the prejudicial impact of any errors when viewed in the context

of the entire trial, including the trial court's curative acts, the extent of the misconduct, and the role of the misconduct in the case. *See Maynard*, 236 F.3d at 606; *Gabaldon*, 91 F.3d at 94. The Tenth Circuit described the court's evaluation as follows:

> A prosecutor's improper statement to the jury is harmless unless there is reason to believe that it influenced the jury's verdict. In assessing whether the misconduct had such an impact, we consider the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case ... [T]o warrant reversal, the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented.

*Gabaldon*, 91 F.3d at 94 (quoting *United States v. Ivy*, 83 F.3d 1266, 1288 (10th Cir. 1996)). *Accord United States v. Green*, 435 F.3d 1265, 1268 (10th Cir. 2006). Where a prosecutor's question elicits an improper answer, the court also looks at whether the prosecutor acted in bad faith. *United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004). While a prosecutor "may strike hard blows, he is not at liberty to strike foul ones." *Gabaldon*, 91 F.3d at 95 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

### III. ANALYSIS

Defendant argues that the Government engaged in a series of acts that amount to prosecutorial misconduct, and that alone, or cumulatively, the proper remedy is to dismiss the indictment or give Defendant a new trial. The Court will address the conduct in turn.

### A. Characterizing defense counsel as "rude" and comments on cross-examination questions

During cross-examination of LeRoy Chama by defense counsel Benjamin Gonzales, Assistant United States Attorney ("AUSA") Kyle Nayback objected that Mr. Gonzales was interrupting the witness while the witness was still finishing his answers. *See* Trial Tr. 387:23-388:1. The Court responded that it is important that only one person speak at a time. *Id.* at 388:2-3. Mr. Gonzales told Mr. Chama that if he would only answer the question asked, without telling

more, they could avoid the problem to which Mr. Nayback was objecting. *Id.* at 388:7-10. After Mr. Gonzales asked a question about a change in C.T. in January 2016, Mr. Chama said, "That's what I was trying to explain, what happened." *Id.* 388:12-17. Mr. Gonzales responded, "That's all right. If I ask you about the train tracks, then I will. But I'm not." *Id.* 388:18-19.

> During his rebuttal closing argument, Mr. Nayback said the following:
>
> You know, Ms. Gagan and Mr. Gonzales cross-examined every witness. And they're seasoned defense attorneys, and they're only asking yes-or-no questions. They don't want explanations.
>
> *They try to get these young women tripped up*, right, by asking: "You said it was in the bedroom, then you said it was in the living room. And only say yes. Only say no."
>
> I think the best example of that was when Mr. Gonzales – remember when Leroy Chama was up here and he wanted to explain why [C.T.] was on the train tracks?
>
> *And Mr. Gonzales said: "I don't want [to] hear about the train tracks. If I want to, I'll ask you," rudely.*
>
> They don't want explanations. They don't want any extra information except to yes-or-no questions.
>
> Young women who have never been in the courtroom before.
>
> And Nick did a good job, didn't he? That is a big question, as to whether it happened in the bedroom.
>
> And [C.T.] told you that was another time.
>
> I mean, [S.S] told you that she got abused so many times it's too many to count. How are they supposed to keep them all straight and where it was? That should make sense to you.

Trial Tr. 550:20-551:25 (italics added).

Counsel has a duty to not make unfounded and inflammatory attacks on opposing counsel. *United States v. May*, 52 F.3d 885, 888 (10th Cir. 1995). *See also United States v. Murrah*, 888 F.2d 24, 27 (5th Cir. 1989) ("No counsel is to throw verbal rocks at opposing counsel. The court

5

will not accept such conduct from any lawyer."). As for the comments about defense counsel trying to trip up the young women on cross examination, the Court is not convinced that the comment was improper or inflammatory. Rather, from the context, it appears the prosecutor was arguing to the jury why cross examination can confuse a witness and why the jurors should look to witnesses' explanations, rather than just the "yes" or "no" answers they give. Regarding the use of the term "rudely," although Mr. Nayback's comments were directed to Mr. Gonzales's exchange with Mr. Chama in which Mr. Gonzales had interrupted Mr. Chama, its use was unnecessary and arguably inappropriate. Nevertheless, it was a fleeting comment that does not amount to an inflammatory attack rising to the level of prosecutorial misconduct. The comment was not significant enough or egregious enough to affect the jury's verdict or deprive Defendant of a fair trial. *Cf. May*, 52 F.3d at 887-89 (holding that prosecutor's comment that defendant was asserting, now that he had a lawyer, a new withdrawal defense to the conspiracy charge, which he had not made to authorities after his arrest, was a brief reference not amounting to an inflammatory attack rising to level of plain error).

### B. Comment on defense subpoena power and "Expected that" comment

In voir dire, the Government's list of witnesses included Vicky Tortalita. Trial Tr. 37:3-15. During the defense closing argument, defense counsel Mallory Gagan made the following arguments:

> And [C.T.] didn't say anything to anyone. Not to Leroy, her supposed confidant; not to her mother, Vicky.
>
> And speaking of Vicky, where was she? The government read you her name at jury selection, and said she would be a witness, and then they didn't call her.
>
> Clearly, she has nothing to say that can corroborate these allegations the girls have made.
>
> …

> The government is not being efficient by only calling the bare necessity of witnesses. They are not being efficient by not calling Vicky Tortalita.
>
> Surely they would bring all of the evidence they have in a crime like this, when they have the burden of proof.
>
> The reason, ladies and gentlemen, they were so efficient in telling their story, is that they have no evidence to support it.
>
> …
>
> And [S.S.] admitted to you – if her testimony was true, she admitted to you that she has lied about these allegations before….
>
> She said she told her mother about these things that had happened to her, but no one ever believed them.
>
> But here, she had the audience of the United States Attorney, who could bring a charge against her uncle, like this one. And she said, nevermind. It didn't happen.
>
> And again, where is Vicky Tortalita to tell you about this?
>
> She asked you to believe it was not the truth when she said that Mr. Coriz did not molest her.
>
> But how do you know what the truth is from someone who admittedly lies?
>
> How do you meet the burden to prove something beyond a reasonable doubt from someone whose answers change based on the circumstances?
>
> And then we had Ms. [M.T.], who claims to have seen Mr. Coriz touch [C.T.] one time.
>
> And she told her mom who, again, did not testify.

Trial Tr. 538:19-539:2, 540:18-541:2, 543:12-544:16.

> Mr. Nayback responded in his rebuttal argument:
>
> Ms. Gagan wants you to believe, Oh, where is Vicky Tortalita?
>
> One thing that's great about our justice system is that the defendant has the right to subpoena any witness that he wants to come to trial. If he thinks Vicky Tortalita is going to help him out, he can subpoena her.

                                      7

Trial Tr. 553:14-20. Ms. Gagan objected and asked to approach, which the Court approved. *Id.* 553:21-23. On his way to the bench, Mr. Nayback said, "Expected that." *Id.* 553:24.

During the bench conference that followed, the Court admonished Mr. Nayback for making "wisecracks" as he approached the bench in front of the jury box. *Id.* 554:1-4. When Mr. Nayback apologized and said he had lost his cool, the Court responded that he is a professional and not supposed to lose his cool. *Id.* 554:5-9. The following exchange then occurred:

> Ms. Gagan: Well, he has lost his cool, Your Honor, and that's highly objectionable. He's shifting the burden in his argument. He's making –
>
> The Court: Yes, he is.

Trial Tr. 554:10-13. Ms. Gagan then moved for a mistrial based on prosecutorial misconduct. *Id.* 554:16-22. Ms. Gagan also argued that he was impugning defense counsel for doing their job. *Id.* 554:24-25. Mr. Nayback responded that there was case law on this, and that when a defendant calls into question why the United States has not called a witness, the government can respond regarding the defendant's subpoena power without burden shifting. *Id.* at 555:5-17. The Court denied the motion for mistrial, finding that the government had not crossed the line, but noting that the Government was "getting very close," and instructing Mr. Nayback to not make comments in front of the jury. *Id.* at 555:23-556:3. Defense counsel did not seek any other form of relief, such as a curative instruction to the jury. *See id.* at 553:21-556:7.

The Government has the burden to prove every element beyond a reasonable doubt and may not shift the burden of proof to the defendant to prove his innocence. *See In re Winship*, 397 U.S. 358, 364 (1970); *Mullaney v. Wilbur*, 421 U.S. 684, 702-03 (1975); *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). If a prosecutor's comment suggests that the defendant has an obligation to produce evidence or to prove innocence, shifting the burden of proof and prejudicing the defendant enough to affect the trial, the court must order a new trial. *See Simon*,

964 F.2d at 1086. Curative instructions, however, may render a prejudicial remark harmless. *Id.* at 1087. Courts presume that jurors follow the court's instructions. *United States v. Hargrove*, 911 F.3d 1306, 1319 (10th Cir. 2019).

Turning first to the question of the propriety of Mr. Nayback's comments regarding Defendant's power to subpoena witnesses, the case of *Trice v. Ward*, 196 F.3d 1151 (10th Cir. 1999), controls. In *Trice*, the prosecutor during closing argument stated: "[B]oth Defense and the State have the power of subpoena. If Leroy Trice—if Eddie Leroy Trice was intoxicated that night, where are the witnesses that say he was intoxicated? Surely somebody saw him." *Id.* at 1166. The Tenth Circuit found no constitutional error in this comment, because it was not aimed at Defendant's failure to testify, but rather was an argument about the lack of corroboration for the defendant's alleged intoxication. *Id.* at 1167. The Tenth Circuit explained: "Although a prosecutor may not comment on a defendant's decision to refrain from testifying, he is otherwise free to comment on a defendant's failure to call certain witnesses or present certain testimony." *Id.* (internal citation omitted).

In this case, Mr. Nayback did not comment on Defendant's decision to remain silent. Instead, to rebut defense counsel's repeated "missing witness" arguments, Mr. Nayback stated that Defendant has the right to subpoena any witness he wants and that he could have subpoenaed Vicky Tortalita if he thought she would help him. According to Tenth Circuit case law, his comments were not improper. *See id. See also United States v. Tucson*, 248 F. App'x 959, 962 (10th Cir. Sept. 28, 2007) ("The prosecutor clearly indicated that the government bore the burden of proof. His comments were limited to pointing out to the jury that the defense had the ability to call Mr. Lucero as a witness if it had wished to do so. Under our case law, such comments are not improper."); *United States v. Trabanino*, 41 F. App'x 302, 305 (10th Cir. May 21, 2002) (holding

9

that prosecutor's two comments in closing rebuttal that government is "not the only one that can subpoena witnesses" did not violate prohibition against comments on defendant's invocation of right not to testify, and thus did not constitute error); *Battenfield v. Gibson*, 236 F.3d 1215, 1225 (10th Cir. 2001) (holding that prosecutor's comments during closing arguments regarding defendant's failure to call certain witnesses or present certain testimony were proper where neither concerned matters that could have been explained only by the defendant); *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998) ("[W]hile a prosecutor may not comment about the absence of witnesses or otherwise attempt to shift the burden of proof, it is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, particularly when done in response to a defendant's argument about the prosecutor's failure to call a specific witness.") (internal quotations omitted); *United States v. Gomez-Olivas*, 897 F.2d 500, 503 (10th Cir. 1990) ("As long as evidence can be solicited other than from the mouth of the accused, it is proper to comment upon the failure of the defense to produce it."). No curative instruction specific to the comment was therefore required by law.

Moreover, the Court instructed the jury that the government has the burden of proving the defendant guilty beyond a reasonable doubt, the law does not require a defendant to prove his innocence or produce any evidence at all, and that the lawyers' statements and arguments are not evidence. Trial Tr. 489:20-23, 495:15-16. The comments in closing argument did not shift the burden of proof to the defendant. *Cf. Gomez-Olivas*, 897 F.2d at 503-04 ("The prosecutor's argument did not shift the burden of proof to the defendant in light of the trial court's subsequent instructions to the jury that arguments of lawyers are not evidence, that the burden of proof is with the government, and that the defendant has no burden to prove innocence, to call witnesses, or to produce any evidence at all.").

As for the "expected that" comment, the Court finds that it was improper and unprofessional for Mr. Nayback to make the comment in front of the jury as he did. The comment, nevertheless, was harmless and did not directly "disparage" defense counsel or indicate that defense counsel was gaming the system or preventing the jury from considering the arguments, as Defendant contends in his reply. It did not impugn the integrity of the trial or influence the verdict. Nor did defense counsel seek an alternative remedy, such as a curative instruction to the jury. The Court's failure to give one was not in error under the circumstances.

### C. Repeated questioning in excluded or reserved areas

Defendant next argues that five times the Government asked a question of a witness on a topic the Court excluded or reserved ruling. Although the Court sustained the defense objection each time, Defendant asserts that the Court did not admonish the jury to disregard the prosecutor's questions or any responses that followed. The Court will examine each of the instances in turn.

1. **Question of S.S**.

In a pretrial ruling, this Court excluded evidence of a comment Defendant made to S.S. after watching a movie called 'Blood In, Blood Out" that she was going to have big boobs like her. *Compare* Mem. Op. and Order 15, ECF No. 126, *with* Gov.'s Sealed Mot. in Limine 3, ECF No. 95 & Gov.'s Ex. 6, ECF No. 95-6. Nevertheless, on redirect examination of S.S., Mr. Nayback asked, "Do you remember watching a movie with [Defendant], 'Blood In, Blood Out"? Trial Tr. 238:11-12. The defense objected and the Court held a bench conference. *Id.* at 238:13-16. Mr. Nayback argued that the defense opened the door by talking about how Defendant was a parent figure, whereas the excluded evidence showed he talked to S.S. like a sex partner. *Id.* at 239:6-10. The Court sustained the objection. *Id.* at 241:1-3.

Because the Court sustained defense counsel's objection, the jury heard no evidence of the

excluded material. Although the government attempted to elicit the testimony after the Court's ruling, it did so on redirect after it believed Defendant opened the door to the testimony. The Court disagreed, but no error or prejudice to Defendant occurred. While the safer course would have been to approach the bench first to ask the Court whether Defendant opened the door to the excluded question before asking it, the Government's attempt to introduce the testimony does not warrant a new trial.

### 2. Question of M.T. regarding choking incident

The Court reserved ruling on the choking incident until it had enough information to weigh the Rule 404(b) factors. *See* Mem. Op. and Order 29, ECF No. 126. During his examination of Agent Jojola, AUSA Nicholas Marshall asked if he had looked into the criminal history of Defendant, to which Agent Jojola replied, "Yes, I did." Trial Tr. 304:18-20. Mr. Marshall then asked if there was "ever an incident with a physical altercation with any of Vicky Tortalita's other children?" *Id.* at 304:21-24. After Agent Jojola responded, "Yes," defense counsel objected, and a bench conference ensued. *Id.* at 304:24-305:3. Mr. Marshall acknowledged that the Court had reserved ruling on the issue, but the Government wanted to get into that information now. *Id.* at 306:1-5. The Court explained that it would need more foundation before making a ruling. *Id.* at 306:20-22. The Court excused the jury to allow voir dire examination of Agent Jojola. *See id.* at 308:11-316:3. After considering the evidence and argument, the Court ruled it is too soon to hear the evidence until a relevant link was established regarding the effect of the incident on C.T. *See id.* at 318:15-25. The Court then sustained the objection. *Id.* at 319:1.

Defendant argues it was improper for the Government to knowingly venture into this line of questioning in front of the jury, which allowed the jury to hear Agent Jojola's answer before defense counsel could object. Defendant asserts that the failure to offer any curative instruction

allowed the jury to improperly consider Agent Jojola's response.

The Court agrees that the better practice to avoid prejudicial error from occurring is to approach the bench regarding lines of questioning about which the Court reserved ruling before asking those questions. That said, no prejudicial error occurred here. The Government ultimately established the necessary foundation through C.T.'s testimony that she was physically afraid of Defendant because there was an incident in which he physically abused her sister, M.T., when he pushed M.T. up against the kitchen wall and choked her by her neck. *See* Trial Tr. 425:1-13.

### 3. Question of M.T. regarding photographs

During examination of M.T., Mr. Nayback asked whether in 2014 or 2015 she recalled seeing any photographs of herself on Defendant's phone, to which she responded, "Yeah." Trial Tr. 365:12-16. Ms. Gagan objected and asked for a bench conference. *Id.* at 365:17-18. When Mr. Nayback pressed on with a question asking what the picture was of, the Court interrupted and explained there had been an objection. *Id.* at 365:20-22. During the bench conference, defense counsel objected to the Government trying to get into the evidence in front of the jury before establishing the requisite foundation, as set forth in the Court's pretrial order. *See id.* at 366:1-22. The Court instructed Mr. Nayback not to talk about the content of the photograph until it established the foundation about her age in the photograph. See id. at 367:24-368:3. During Mr. Nayback's questioning of M.T., however, he was not able to establish that she was a minor in the photograph, so the Court sustained the objection. *Id.* at 368:11-369:6.

Defendant asserts error, even though the Court sustained the objection, because "asking questions of a witness that alludes to unlawful conduct is prejudicial when it is presented before the jury." Def.'s Mot. 19, ECF No. 162. Defense counsel also argues that the Government's notice said the information would come from S.S., not M.T., and that the Government pressed on with

13

the questioning even though it should have been prepared and known that M.T. was not a minor at the time.

The Government attempted to introduce this evidence before establishing the relevant foundation, as set forth in the Court's pretrial order. The Court, however, sustained the objection and the jury heard no prejudicial evidence – only that she saw a photograph of herself on Defendant's phone. That evidence is not enough to suggest unlawful conduct or a bad act. Moreover, the Court instructed the jury:

> During the trial I did not let you hear the answers to some of the questions that the lawyers asked. Do not speculate about what a witness might have said. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Trial Tr. 495:22-496:2. The Court thus finds no error or prejudice.

### 4. Question of M.T. regarding 2014 domestic violence incident

Despite the Court's admonition that it would need testimony from C.T. about whether the choking incident made her fearful before the Court could find it relevant, Mr. Nayback asked M.T., who took the witness stand before C.T., to describe the incident in which she and C.T. were fighting over a remote control. *See* Trial Tr. 369:16-24. Defense counsel objected and the Court held another bench conference. *Id.* at 369:25-372:12. Mr. Nayback explained that the testimony was relevant and admissible through M.T. because she did not disclose the incident of Defendant pulling down C.T.'s pants right away because she feared the defendant. *Id.* at 371:3-14. The Court sustained the objection because the issue with M.T. was not yet relevant. *Id.* at 372:7-10.

As explained *supra* regarding the attempt to introduce this same evidence through Agent Jojola, the Court sustained the objections, so the jury heard no prejudicial testimony through M.T. Moreover, the jury ultimately heard evidence regarding the choking incident through C.T., and thus, there is no prejudicial error.

### 5. Question of C.T. regarding 2006 incident

During cross-examination of Agent Jojola, Mr. Gonzales asked Agent Jojola about whether, in an interview with the F.B.I., C.T. gave a slightly different account of how the encounter with Mr. Coriz went. Trial Tr. 339:19-340:6. After Agent Jojola responded "yes," Mr. Gonzales drew a hearsay objection when he asked about what the difference in the account was. *Id.* at 340:7-11. During the bench conference, Mr. Gonzales explained he wanted to get into evidence that, in the first account, C.T. said the abuse took place in the bedroom, but in the second account, she said it took place in the living room. *Id.* at 341:13-18. Mr. Marshall responded that this testimony would open the door to excluded evidence because the Government's position was that in the first interview, it was not clear about which time Mr. Coriz abused C.T. the interviewer was asking. Id. at 341:19-342:16. Mr. Gonzales then withdrew the question. *Id.* at 342:17-343:6.

During Ms. Gagan's cross-examination of C.T. regarding the first interview, she asked, "And you told her that it happened in the bedroom, right?" *Id.* at 416:21-417:5. C.T. responded, "Yes." *Id.* at 417:6. Ms. Gagan then asked, "And that your uncle came into the room and closed the door?" *Id.* at 417:7-8. C.T. replied, "Yes." *Id.* at 417:9.

On redirect examination of C.T., the following exchange occurred:

Mr. Marshall:  Now, the defense also asked another question about a bedroom and closing the door.

C.T.:   Yes.

Mr. Marshall:  That you were describing, I guess, a time in the forensic interview about a bedroom and a closed door. What was that about?

C.T.   That was when I was staying in my grandma's room.

Mr. Marshall:  And so was that a different time than the one we're talking about?

C.T.   Yes, it was a different time.

Mr. Marshall: Do you recall how old you were then?

Ms. Gagan: Objection, Your Honor.

Trial Tr. 425:14-426:2. At the bench conference, the Government argued that the defense opened the door to this line of questioning regarding an incident of sexual abuse in 2006, because defense counsel impeached C.T. with answers she gave in a forensic interview in which she described abuse occurring in the bedroom. *See id.* at 426:16-429:22. The Government wanted to clarify that the time in the bedroom was a separate incident from the 2015 charged crime in the living room. *See id.* The Court sustained the objection, concluding that the Government already clarified with the witness her answer that it was a different time. *See id.* at 432:19-433:6.

Defendant argues that the reference of the separate incident involving C.T. violated the Court's ruling and was highly prejudicial. Although the Court excluded testimony from M.T. and C.T. regarding past sexual abuse by Defendant that were part of the 2006 charged crimes for which a jury acquitted Defendant, the Court noted "it may revisit this decision should the defense open the door to the testimony." Mem. Op. and Order 23, ECF No. 126. Defense counsel opened the door to the question when Ms. Gagan asked C.T. about the answer she gave in the first interview in which she described the abuse occurring in the bedroom. The Court permitted very limited questioning to allow the Government an opportunity for C.T. to clarify that she had been describing a different instance. The Government's conduct was not improper in its questioning and the evidence that came in was proper to rebut Defendant's impeachment evidence.

### D. Cumulative Effects

"A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Barrett*, 496 F.3d 1079, 1121 (10th Cir.

16

2007) (quoting *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002)). The court examines the actual errors that occurred and whether the cumulative impact affected the defendant's substantial rights. *Id.*

Defendant contends that the cumulative impact of the instances of misconduct warrant vacating the verdict, dismissing the indictment, or granting a new trial. Defendant argues that the repeated objections the Government forced it to make, combined with the prosecutor's inappropriate comments, created the impression that the defense team was trying to hide relevant evidence and argument from the jury.

The Court disagrees that the cumulative effect of the identified errors substantially affected Defendant's due process rights. The Court's instructions made clear to the jury that objections are part of any trial and the jury is not to consider as evidence the lawyers' statements, arguments, questions, objections, and what a witness might have said. In considering the evidence the jury had before it that it could consider, the evidence of guilt was strong. The errors noted were minor and do not warrant the drastic action of reversal for a new trial. *Cf. Gabaldon*, 91 F.3d at 95 (holding that district court did not abuse its discretion in denying defendant's motion for mistrial where errors were minor, and court minimized damage by sustaining objections and instructing jury that arguments of counsel were not evidence).

**IT IS THEREFORE ORDERED** that Defendant Tyrone Coriz's Motion to Dismiss, or Alternatively, to Grant a New Trial (**ECF No. 162**) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**